UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| LORANDA VEIS, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>  v.<br><br>AMCOL SYSTEMS, INC.,<br><br>        Defendant. | Case No.: 18-cv-781<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Loranda Veis is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes, namely medical services.

5. Plaintiff is also a "customer" as defined the WCA, Wis. Stat. § 421.301(17), in that Plaintiff allegedly acquired services, specifically medical care, for personal, family, or household purposes.

6. Defendant Amcol Systems, Inc. ("Amcol") is a foreign corporation with its primary offices located at 111 Lancewood Road, Columbia, South Carolina 29210.

7. Amcol does substantial business in Wisconsin and has a registered agent for the purpose of service of process located at Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

8. Amcol is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. Amcol is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. Amcol is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

11. Amcol is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

12. On or about January 3, 2018, Amcol mailed a collection letter to Plaintiff regarding an alleged debt, allegedly owed to "Franklin Hospital." A copy of the letter is attached to this complaint as Exhibit A.

13. Upon information and belief, the alleged debt identified in Exhibit A was incurred for medical services.

14. With respect to the medical debt listed in Exhibit A, Plaintiff was not required to pay for the medical services at the time services were rendered. Instead, Wheaton mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

15. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

16. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect the alleged debt.

17. Upon information and belief, Exhibit A was the first written communication Plaintiff received from Amcol regarding this alleged debt.

18. Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors to send along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor. This is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector.

19. Exhibit A also lists "Franklin Hospital" as the creditor of Plaintiff's alleged debt in several instances, and the letter does not reference any other name of such creditor.

20. The header of Exhibit A includes the following representations:

3

```
Date:            January 3, 2018
Balance:              $ 701.25

Total Due:            $ 701.25
Creditor: Franklin Hospital
```

21. The body of Exhibit A additionally states: "Your account(s) have been placed with this agency for collection by Franklin Hospital."

22. Additionally, the remittance slip includes the following representations:

```
Creditor: Franklin Hospital
Account #: ████4310
Service Date: 07/01/17

Total Due          $ 701.25
```

23. Upon information and belief, no entity named "Franklin Hospital" ever provided medical services to Plaintiff or contacted Plaintiff using that name.

24. "Franklin Hospital" is not a business or trade name that any medical service provider has used from the inception of any business transaction with Plaintiff or any member of the class. "Franklin Hospital" is not a commonly used acronym for any creditor.

25. The unsophisticated consumer would have no idea who "Franklin Hospital" is or how to contact it or what account(s) Exhibit A was attempting to collect.

26. Upon information and belief, the alleged debt referenced in Exhibit A is actually a debt that Plaintiff allegedly owed to "Wheaton Franciscan Healthcare" ("Wheaton").

27. At some point prior January 3, 2018, Plaintiff received an invoice for medical services from Wheaton. A copy of this invoice is attached to this Complaint as Exhibit B.

28. Exhibit B lists a "Current Balance" of 701.25, which is the same amount as the amount listed as the "Total Due" by Exhibit A, and it also lists the same "Service Date" of 07/01/2017 as that listed by Exhibit A.

4

29. Exhibit B includes no reference to "Franklin Hospital" or the name of any other creditor aside from Wheaton.

30. The FDCPA requires the debt collector to provide written notice containing "the name of the creditor to whom the debt is owed;" 15 U.S.C. § 1692g(a)(2).

31. To satisfy § 1692g(a)(2), a debt collector may provide "the name under which [the creditor] usually transacts business, or a commonly-used acronym, or any name that it has used from the inception of the credit relation." *Blarek v. Encore Receivable Mgmt.*, No. 06-cv-420-WEC, 2007 U.S. Dist. LEXIS 22549 at *22 (E.D. Wis. Mar. 27, 2007).

32. However, "a particularly non-obvious acronym can on its face constitute a plainly confusing statement in violation of § 1692g(a)(2)." *Id.* at *23.

33. Misrepresentation of the name of the creditor with respect to medical debt and particularly hospital-related medical debt, is especially dangerous to the unsophisticated consumer.

34. It is not unusual for a consumer to receive several bills for a single period of hospitalization – for example, from multiple doctors, physicians' groups, the hospital itself, the laboratory, diagnostic services, and more.

35. Misrepresenting the creditor as the name of the hospital creates and exacerbates the risk that the consumer will pay the wrong entity, or double-pay, or fail to pay believing that a legitimate charge is a double-billing.

36. The consumer would also be unable to effectively prioritize payments, not knowing the actual recipient of the payment.

37. Plaintiff was confused by Exhibit A.

38. The unsophisticated consumer would be deceived, misled, and confused by Exhibit A.

### *The FDCPA*

39. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in *Pogorzelski*, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is

violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

40. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

41. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

42. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

43. 15 U.S.C. § 1692g(a)(2) requires that a debt collector to provide, within five days after the initial communication with the consumer in connection with the collection of any debt, written notice containing "the name of the creditor to whom the debt is owed."

### *The WCA*

44. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

45. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

46. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

47. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

48. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

49. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

50. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

51. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

52. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

53. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

54. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair

9

Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

55. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

56. <u>Exhibit A</u> misstates the name of the creditor to whom the alleged debt that it was seeking to collect is owed.

57. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692g(a)(2).

## COUNT II – WCA

58. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

59. Defendant is a licensed Collection Agency.

60. Defendant's conduct violates the FDCPA. Wis. Admin. Code DFI-Bkg 74.16(9).

61. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

62. Plaintiff brings this action on behalf of two Classes.

63. Class I ("Wisconsin Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) with the "Creditor" listed as "Franklin Hospital," (f) where the letter was sent between May 22, 2017 and May 22, 2018, inclusive, (g) and was not returned by the postal service.

64. Class II ("Nationwide Class") consists of (a) all natural persons in the United States (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint

in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) with the "Creditor" listed as "Franklin Hospital," (f) where the letter was sent between May 22, 2017 and May 22, 2018, inclusive (g) and was not returned by the postal service.

65. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

66. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

67. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

68. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

69. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

70. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: May 22, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com